# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Keith Jackson, | ) | Civil Action No. 5:19-cv-0163-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Andrew M. Saul, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"),

denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act

("the Act"). Having carefully considered the parties' submissions and the applicable law, the

court affirms the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

        A.      Procedural History

        On January 26, 2015,[1] Plaintiff filed an application for DIB alleging a disability onset

date of August 26, 2014. Tr. 163-66. His claim was denied initially, Tr. 88, and upon

reconsideration, Tr. 101, and Plaintiff requested a hearing, Tr. 120. On September 29, 2017, a

hearing was held before an Administrative Law Judge ("ALJ") and testimony was taken from

Plaintiff who was represented by counsel. Tr. 56-77. On December 27, 2017, the ALJ issued an

unfavorable decision finding Plaintiff was not disabled. Tr. 32-49. Plaintiff requested review of

---

[1] Although the Application Summary is dated January 30, 2015, Tr. 163, based on the Disability Determination and Transmittal, Plaintiff's protected filing date is January 26, 2015, Tr. 88.

the decision from the Appeals Council, Tr. 160-61, and the Appeals Council denied review on November 21, 2018, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed January 18, 2019. ECF No. 1.

B.      Plaintiff's Background

Born in March 1971, Plaintiff was 43 years old on his alleged onset date of August 26, 2014. Tr. 219. In his January 31, 2015 Disability Report-Adult Plaintiff noted that he completed the 12th grade and had not completed any type of specialized job training or vocational school. Tr. 177. He listed his past relevant work ("PRW") as: tire company repairman (1995-2007) and S.C. Department of Transportation ("DOT") trade specialist (5/17/2007 – 8/26/2014). *Id.* Plaintiff indicated that he stopped working on August 26, 2014, because of his medical conditions, which he listed as: back injury, pinched nerve in back, depression, severe anxiety, high blood pressure, allergies, leg pain, and acid reflux. Tr. 176. Plaintiff indicated that he was 5'7" tall and weighed 210 pounds. *Id.*

In a June 19, 2015 Disability Report-Appeal, Plaintiff indicated a change in his medical condition of pain radiating down both legs with worse pain in his right leg. Tr. 212. In a subsequent Disability Report-Appeal dated October 15, 2015, Plaintiff indicated a change in his medical condition that occurred in September 2015. Tr. 224. Plaintiff noted: "My depression has gotten worse and I am continuing to still be in pain. The pain radiates down both of my legs with my right leg being the worse." Tr. 224.

C.      Administrative Proceedings

Plaintiff appeared with counsel for his administrative hearing on September 29, 2017. Tr. 56. In response to questions from the ALJ Plaintiff confirmed he was 46 years old, a high school

graduate, lived alone, was not working, and received income and medical care through Workers'
Compensation benefits. Tr. 58-59. The ALJ confirmed Plaintiff's onset date of August 26, 2014,
and that Plaintiff has not worked since that date. Tr. 59. Plaintiff testified that his last job was as
a trade specialist with the South Carolina DOT in Chesterfield County. Tr. 60. Plaintiff stated
that his duties were to "[d]ock trucks, run some equipment and we used hand tools like shovels,
rakes and dug ditches and cut trees." *Id.* Plaintiff confirmed the work was very heavy. *Id.*
Plaintiff testified that in August 2014 he went into the cool room at work where the ice for
coolers is kept, slipped on ice on the floor, fell and hurt his back. *Id.* Plaintiff stated that he has
not attempted to return to work after that injury and, other than Workers' Compensation, did not
draw any other unemployment insurance. *Id.*

In response to questions from his attorney Plaintiff testified that he drew out his sick
leave and vacation pay in 2015 but did not work in 2015. Tr. 61. Plaintiff testified that he still
drives a car, but he cannot drive long distances and is unable to twist and turn because his back
hurts too much. *Id.* Plaintiff stated that he has two herniated discs in his mid-back, and he has a
pinched nerve in his lower back that causes pain that runs down his leg. *Id.* Plaintiff stated that it
took one hour and 20 minutes to drive to the hearing from where he lived, but someone else
drove him and he was able to ride without stopping. Tr. 61-62.

Plaintiff testified that before working for the DOT he worked for 15 years for Gerard Tire
until the company closed in 2007. Tr. 62. Plaintiff stated that he was a repair specialist at Gerard
Tire and "handled big tires a lot and lifted rubber and recapped tires." *Id.* Plaintiff testified that
after his injury at the DOT he spoke with his family doctor, Dr. Novinger, about going back to
work and the doctor "didn't see that [he] could." Tr. 62-63. Plaintiff confirmed that he had a
spinal cord stimulator implanted in January 2017 that helped his lower back pain, but it did not

get rid of the pain completely. Tr. 63. Plaintiff testified that he still has pain in his mid and lower back that hurts every day. *Id.* Plaintiff testified that his shoulders and knees also hurt, and his "right leg gives more trouble than the other" and his "left shoulder hurts more than the right one, but they all hurt." *Id.* Plaintiff described the pain in his back as a constant "aggravating pain" and at times he has a sharp pain in his right leg. Tr. 63-64. Plaintiff stated the pain in his shoulders and knees was related to his arthritis and was a "grinding" pain. Tr. 64. Plaintiff testified that the pain in his right leg was because he fell in March 2017 while walking and his leg collapsed. Plaintiff stated that he broke his leg and had to have a titanium rod put in his leg. *Id.* Plaintiff testified that he still limps, has trouble going up and down steps and "just walking," and still has pain in the area of the actual break. Tr. 65. Plaintiff stated that the pain in his back and knees is worse if he sits or stands too long, or with colder or rainy weather. *Id.* Plaintiff testified that he "can walk some, but it hurts [his] lower back a lot." *Id.* Plaintiff testified that he could walk for 15 minutes but after 15 minutes he would have to sit down. *Id*. Plaintiff stated he could probably stand in one place for 30 minutes. *Id.* Plaintiff testified that he could sit in a straight chair for 30 minutes and noted that in the ride to the hearing he had to recline his seat. Tr. 66. Plaintiff testified that he did his own grocery shopping and carried the groceries in the house "a bag at a time." *Id.* Plaintiff indicated he was able to carry a gallon of milk. *Id.*

Plaintiff confirmed that he was still taking hydrocodone every six hours, taking gabapentin three times a day for nerve pain, and taking tizanidine three times a day for muscle spasms. Tr. 66-67. Plaintiff testified that the medication causes drowsiness and sometimes he will "actually take a nap from it." Tr. 67. Plaintiff stated that two or three days a week he will take a nap that lasts a couple of hours. *Id.* Plaintiff testified that he had tried using ice and heat, but it did not help with his pain. *Id.* Plaintiff testified that he had been able to use the spinal cord

stimulator again only recently after his broken leg because he thought "it did something to the nerves in [his] leg" that would cause it to hurt more than it normally did. Tr. 67-68. Plaintiff confirmed that he was taking Xanax and that he was still having problems with anxiety. Tr. 68. Plaintiff also confirmed that he was taking buspirone and duloxetine for depression. *Id.* Plaintiff testified that he sometimes still had problems with depression despite taking the medication. Tr. 68-69. Plaintiff stated that he still had anxiety issues and would sometimes get nervous, have trouble sleeping, or would have panic attacks that affected his breathing. Tr. 69. Plaintiff testified that he has panic attacks "a few times a week." *Id.* Plaintiff testified that with his anxiety attacks he gets "short winded" and it feels as if he has a weight on his chest. Plaintiff noted that in the previous year he had a heart attack, but he has "had anxiety attacks that actually hurt worse than the heart attack did." *Id.* Plaintiff stated that he uses breathing techniques to help with the panic attacks. Tr. 70. He stated that if he does his deep breathing exercises it takes "roughly about 30 minutes" for the panic attack to pass. *Id.* Plaintiff testified that when he is depressed he does not want to be around other people and socialize. He also stated that he sleeps a lot when he is depressed. *Id.* Plaintiff testified that his doctor told him to visit with friends or watch TV to alleviate his feelings of isolation. *Id.* Plaintiff stated that he visits his friends three or four times a week. Tr. 71. He testified that he watches TV shows that last 30-60 minutes but is unable to concentrate long enough to watch movies. *Id.* Plaintiff testified that he likes to hunt and fish but has not hunted in the past year because he cannot sit in a deer stand for a long period of time. *Id.* Plaintiff's counsel noted that Plaintiff stood during the hearing and Plaintiff confirmed that he has to change positions frequently. Tr. 71-72. Plaintiff testified that he does his own housework but he does tasks in spurts of 25-30 minutes at a time followed by 25-30-minute breaks. Tr. 72. Plaintiff testified that he cooks small meals such as sandwiches or frozen meals. *Id.* Plaintiff

stated that his blood pressure is "all right" but he has a lot of dizzy spells when standing—on average once or twice a day. Tr. 73. Plaintiff confirmed that he takes metformin twice a day for diabetes, and he was recently given a prescription for diabetic shoes after undergoing a nerve conduction study. *Id.* Plaintiff also noted that he takes medication for reflux. Tr. 74.

In response to follow-up questions from the ALJ Plaintiff testified that, other than the stimulator, he has had shots in his back that did not help, and he has pain medication. Tr. 74. Plaintiff confirmed that the stimulator was disconnected for a short period of time after he broke his leg, but he recently started using it again. Tr. 74-75. Plaintiff testified that he had physical therapy, but it did not help. Tr. 75. Plaintiff stated that he was discharged from physical therapy because the pain would cause his blood pressure to rise. *Id.* Plaintiff stated that one doctor discussed back surgery with him but the doctor "said he did not want to risk doing the surgery because it could cause too many other problems." *Id.* Plaintiff testified that he did not know of any end date for his Workers' Compensation benefits. *Id.* Plaintiff stated that he is 5'7" tall and weighs approximately 210 pounds. *Id.* Plaintiff stated that he gained a lot of weight—up to 240 pounds—when he was taking Lyrica for fibromyalgia for his leg. Tr. 76. Plaintiff noted that once he was taken off the medication his "weight went back down." *Id.*

II.     Discussion

   A.     The Commissioner's Findings

In his December 27, 2017 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2.     The claimant has not engaged in substantial gainful activity since August 26, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: obesity; coronary artery disease; and lumbar radiculopathy (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on March 23, 1971 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 26, 2014, through the date of this decision (20 CFR 404.1520(g)).

Tr. 37, 39, 48-49.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S.

_____

impairment is disabling at Step 3).

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges (1) the ALJ erred in finding that Plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work, (2) the case should be remanded for consideration of additional evidence, and (3) the ALJ erred in finding Plaintiff's anxiety and depression are non-severe impairments. Pl.'s Br. 19-24, ECF No. 17.

1.     The ALJ's RFC Determination

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the

*most*. *Id.* (emphasis in original). At the administrative hearing level the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4).

Here, the ALJ determined that Plaintiff "has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." Tr. 39. The ALJ stated that in making this finding he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." *Id.* The ALJ noted that he also considered the opinion evidence in accordance with 20 CFR 404.1527. *Id.* The ALJ discussed Plaintiff's testimony describing his impairments and activities, and Plaintiff's treatment history from 2014 through 2017, and determined as follows:

> Treatment notes simply fail to indicate the level of dysfunction alleged by the claimant. A review of the medical evidence of record fails to indicate physical findings consistent with the claimant's allegations. The record documents that his untreated mental health issues and underlying substance abuse, including overuse of prescription pain medication exacerbated the claimant's physical injuries. I note that the claimant reported enjoying woodwork, which is consistent with the claimant's ability to perform the above stated residual functional capacity. Additionally, the limitations placed on the claimant by numerous workers compensation and treating physicians have all been consistent with the ability to perform at least sedentary work. The claimant's impairments have improved significantly with treatment.

Tr. 47.

Plaintiff contends that his need to frequently change positions, the inability to stand and walk for up to two hours daily, his inability to bend from the waist, his medication side effects, and his inability to concentrate are all inconsistent with the ability to perform the requirements of sedentary work. Pl.'s Br. 19-20, 22-23. Plaintiff also contends that because the "inability to

stoop/bend significantly erodes the unskilled sedentary occupational base and the Plaintiff has severe nonexertional limitations, the Commissioner committed reversible error by failing to obtain vocational expert testimony." *Id.* at 24. The Commissioner contends that substantial evidence supports the ALJ's RFC determination. Def.'s Br. 19-27, ECF No. 20.

The Administration's policy interpretation on assessing an individual's RFC emphasizes that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The functions identified in the cited regulation include: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 404.1545(b)-(d). In *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015), the Fourth Circuit addressed whether an ALJ's failure to perform a function-by-function assessment necessitates remand. The court held that "a per se rule [requiring remand] is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* at 636. However, the court "agree[d] with the Second Circuit that '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* The Fourth Circuit has clarified that while the RFC assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusions, there is no particular language or format to follow so long as it permits meaningful judicial review. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). SSR 96-9p defines sedentary work as follows:

The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p, 1996 WL 374185 at *3 (July 2, 1996).

### a. Standing/Walking Requirements

Plaintiff contends that because of his chronic back pain, the rod in his right leg, the need to change positions frequently, and decreased sensation in his feet, he is unable to perform the standing and walking required of sedentary work. Pl.'s Br. 19-20. The Commissioner argues that in making these assertions Plaintiff does not rely on a medical opinion, but instead relies on his own subjective complaints. Def.'s Br. 20. Citing to the regulations, the Commissioner notes that the ALJ is not required to accept a claimant's subjective complaints about his limitations but has the discretion to weight the complaints against the record as a whole. *Id.* (citing 20 C.F.R. § 404.1529(a)).

The ALJ discussed Plaintiff's impairments and his testimony regarding his physical limitations and found that Plaintiff's "subjective complaints to his physicians, the objective findings documented in his medical records, and the treatment he has required do not support a finding that his severe impairments prevent him from performing all work." Tr. 40. In support of his findings the ALJ cited to medical records from August 2014 when Dr. Travis Novinger placed Plaintiff on work restrictions limiting him to standing one hour, walking one hour, and

sitting eight hours. Tr. 41. The ALJ noted that on September 1, 2014 Plaintiff went to the emergency room reporting back pain, but physical examination revealed the following:

> [N]o spinal tenderness, no costovertebral tenderness, a full range of motion. The claimant was noted to have 5/5 muscle strength in all extremities, with sensory grossly intact, normal cerebellar exam, normal gait, and normal speech. Straight leg raises of both lower extremities did not illicit pain.

*Id.* The ALJ cited to a September 23, 2014 evaluation of Dr. Novinger where Plaintiff reported pain limiting his ability to ambulate and the doctor noted Plaintiff's use of a crutch. Tr. 42. Dr. Novinger instructed Plaintiff not to use the crutch, referred Plaintiff for x-rays and physical therapy, and limited Plaintiff to light duty with "no standing greater than five minutes every three hours, and walking further than fifty yards. (Exhibit 3F)." *Id.* The ALJ referenced treatment notes from Dr. Samuel Davis of Carolina Orthopedic Surgery from November 2014 diagnosing Plaintiff with lumbar strain and stating Plaintiff had no restrictions and could return to work at full duty. *Id.* A few days later Plaintiff reported worsening back pain and Dr. Davis "wrote the claimant to be out of work until he could be seen by a physiatrist. (Exhibit 1F)." *Id.* The ALJ noted an April 20, 2015 emergency room report that indicated, among other things, that Plaintiff had 5/5 motor strength in all extremities, normal gait, normal range of motion in the spine, no muscle spasms, and negative straight leg raises. Tr. 43. The ALJ indicated that on December 16, 2015 Dr. Rakesh Chokshi evaluated Plaintiff for a surgical consult and noted the following:

> [C]laimant had a normal gait and station, with no tenderness to palpation of the spine; no soft tissue triggers; no muscle spasms; full range of motion with forward flexion, and extension; full and painless range of hip motion; negative bilateral straight leg raises; muscle strength 5/5 throughout; normal neurological sensory testing throughout; and normal pulses and reflexes.

Tr. 44. The ALJ noted that in March 2017 Plaintiff fell and fractured his right tibia requiring surgery with internal fixation with a rod. Tr. 46. The ALJ also referenced a follow-up examination on May 25, 2017 with Dr. Thomas Mazzanote who stated Plaintiff "could be

weightbearing as tolerated going forward, and that x-rays showed hardware in place and fracture healing well, with good alignment. (Exhibit 27F)." Tr. 47. After reviewing the medical records, the ALJ concluded:

> I note that there are numerous short term work excuses and limitations in the record, mostly submitted for the purpose of workers compensation, however, these limitations and findings are temporary in nature and are therefore limited in value. However, I note that the majority of these statements are consistent with the claimant's ability to perform sedentary work.

*Id.*

In making his assertion regarding his inability to stand and walk for the number of hours required for sedentary work, Plaintiff cites to no documentation to support his claim other than a medical report from a nurse practitioner ("NP") at Palmetto Family Medicine who prescribed diabetic shoes for him. Pl.'s Br. 20. In the September 14, 2017 progress note, the NP noted "he is asking if we can order diabetic shoes for him – we will do a foot exam and send in an order to his pharmacy." Tr. 1051. The NP performed a foot exam and noted "diminished" sensations. However, there are no indications the NP performed a muscular examination, nor did she indicate any limitations regarding Plaintiff's ability to stand and walk. The ALJ's consideration of the objective medical evidence supports his RFC determination.

### b.    Ability to Stoop/Bend

Plaintiff states that the ALJ "relied heavily on the opinion of Dr. Anthony Alexander" in making his determination that Plaintiff could perform sedentary work. Pl.'s Br. 20. Plaintiff notes that Dr. Alexander limited him to no bending at the waist. *Id.* Citing to SSR 96-9p's limitation regarding stooping, Plaintiff argues that he "cannot perform the full range of sedentary work when he is limited to no bending at the waist." *Id.* at 20-21. The Commissioner points out that although the ALJ gave significant weight to Dr. Alexander's opinions, he did so "to the

extent that they were consistent with Plaintiff's ability to perform sedentary work (Tr. 47)." Def.'s Br. 23. The Commissioner further argues that, based on his actual treatment notes, Dr. Alexander noted that Plaintiff could bend at the waist or stoop at least occasionally and limited Plaintiff to no bending at the waist for only one month. *Id.* at 24.

Dr. Anthony Alexander evaluated Plaintiff on February 27, 2017 and noted as part of his treatment plan that Plaintiff was restricted to "no lifting, pushing or pulling greater than 15 pounds and avoid frequent bending at the waist." Tr. 660. The accompanying "Return to Work Order Form" lists restrictions as "No lifting, Pushing or Pulling greater than 15 pounds, No bending at the waist. Please allow the patient to adhere to these restrictions until seen back in one month." Tr. 662-63.[3] Dr. Alexander examined Plaintiff again on June 19, 2017 for lumbar follow-up. Tr. 1035. In his notes he indicated: "Mr. Jackson presents today in follow-up. He denies having any side effects with any of the medications. He will follow-up in one month for medication management. We will resume previous restrictions." *Id.* The accompanying "Return to Work Order Form" indicates Plaintiff can return to work on June 20, 2017 and lists the same restrictions that appeared in the February 2017 form including the limitation of no bending at the waist. Tr. 1038-39.[4]

Plaintiff cites to the "no bending at the waist" restriction to support his claim that he is unable to work. However, given that his February treatment note indicates a limitation that Plaintiff should avoid frequent bending—a restriction compatible with sedentary work—and his June statement indicated Plaintiff could return to work the next day, it is apparent that Dr. Alexander did not find Plaintiff incapable of working. The ALJ's reliance on Dr. Alexander's opinion does not conflict with his RFC assessment.

---

[3] In his Decision the ALJ cites Exhibit 15F; however, the correct exhibit number is 25F.

The ALJ determined that despite Plaintiff's severe impairments, he retained the ability to "perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." Tr. 39. SSR 83-12 provides that the occupational base is affected when the individual's exertional RFC does not coincide with the definition of the range of work as defined in the regulations. 1983 WL 31253 at *2. "Plaintiff bears the burden of showing the limitations which may erode the availability of sedentary work." *Gravely v. Astrue*, No. 4:09CV00020, 2010 WL 1473844, at *3 (W.D. Va. Apr. 9, 2010), *report and recommendation adopted,* No. 4:09CV00020, 2010 WL 1688085 (W.D. Va. Apr. 26, 2010).

Plaintiff argues that because he was limited to no bending at the waist, he could not perform the full range of sedentary work. Therefore, the ALJ was required to obtain testimony from a vocational expert to determine the impact of his limitation on the available job base. Pl.'s Br. 21. SSR 96-9p provides that a "*complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." 1996 WL 374185 at *8 (emphasis in original). The ruling notes that "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." *Id.* However, SSR 85-15 notes that some stooping—"bending the body downward and forward by bending the spine at the waist"— is required to do almost any kind of work. SSR 85-15, 1985 WL 56857 at *2. "If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857 at *7.

---

[4] The ALJ cites again to Exhibit 15F; however, the correct exhibit number is 32F.

As discussed above, the court finds that based on Dr. Alexander's actual treatment notes, Plaintiff was instructed to avoid frequent bending at the waist. Accordingly, this limitation does not erode the occupational base for sedentary work, nor does it require the use of a vocational expert. The ALJ did not err in his use of the Medical-Vocational Guidelines in making his Step Five determination.

c.   Plaintiff's Medication Side Effects and Inability to Concentrate

Plaintiff argues that his "side effects of medication and his inability to focus and concentrate due to the effects of his pain, medication, and mental impairments such that he could complete work tasks should have been considered in his residual functional capacity as is required by SSR 96-8p." Pl.'s Br. 22. The Commissioner contends that "the ALJ considered Plaintiff's allegations of pain, medication side effects, and inability to concentrate; but . . . found that Plaintiff only had a mild limitation with regard to concentrating, persisting, or maintaining pace." Def.'s Br. 26.

SSR 96–8p provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7. The court notes, though, that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the

ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

At Step Two of the sequential evaluation process the ALJ noted Plaintiff's medically determinable mental impairments of anxiety and depression but determined them to be "nonsevere." Tr. 38. The ALJ considered the four areas of mental functioning—the Paragraph B criteria found in the Listing of Impairments—and determined Plaintiff had only mild limitations in all four areas, including the functional area of concentrating, persisting, or maintaining pace. *Id.* The ALJ noted specifically that "Dr. Mondi's treatment notes in March 2017 and July 2017 describe the claimant as having good attention, good impulse control, and good judgment. (Exhibit 29F)."[5] *Id.* In support of his RFC assessment the ALJ discussed Plaintiff's testimony from the administrative hearing noting Plaintiff's testimony that he "takes hydrocodone for pain, and gabapentin for muscle spasms. The medications make him drowsy, and he takes naps during the day, for a couple of hours." Tr. 40. Citing to the medical evidence of record the ALJ discussed Plaintiff's reports to medical personnel regarding pain after a fall at work in 2014. Tr. 41-42. The ALJ cited to the February 24, 2015 mental health statement of Dr. Travis Novinger who indicated Plaintiff had "good attention and concentration, and good memory." Tr. 42. The

---

[5] The doctor's correct name is Nikunjkumar Modi. Tr. 867. Dr. Modi's July 2017 progress note indicates that Plaintiff reported he had "good energy, motivation, [and] concentration." *Id.* Plaintiff also denied having any side effects from his medications. *Id.*

ALJ also noted that "Dr. Novinger stated that the claimant had good ability to complete basic tasks of daily living; good ability to relate to others; good ability to complete simple, routine tasks; and good ability to complete complex tasks. (Exhibit 6F)." Tr. 42-43. The ALJ also discussed the October 12, 2016 psychological evaluation of Plaintiff made by Dr. Dora Windsorova clearing Plaintiff to undergo spinal cord stimulator placement for pain management. Tr. 45. The ALJ noted that Dr. Windsorova stated that "there had been significant improvement in the claimant's depression" and that "claimant's cognition and daily functioning had improved with a decrease in Xanax. (Exhibit 26F)." *Id.* The ALJ concluded his RFC discussion by giving significant weight to Dr. Windsorova's opinions noting:

> Specifically, Dr. Windsorova's statements that the claimant's mental health impairments were exacerbated by overuse of prescription medication and the use of marijuana, and that the claimant's mental impairments resulted in excessive concern for his physical limitations are consistent with the claimant's improvement with treatment and a finding that the claimant is not disabled.

Tr. 48. The ALJ also gave significant weight to the psychiatric assessments of the State agency medical consultants finding that their determination that Plaintiff's depression and anxiety are not severe to be consistent with the evidence of record. *Id.* The ALJ found Plaintiff was not disabled "[d]ue to the claimant's extensive activities of daily living, lack of supporting medical evidence, and inconsistencies in the record[.]" *Id.*

As noted above, an ALJ is not required to specifically discuss every piece of evidence in the record. With regard to side effects from medication, Plaintiff references his testimony at the administrative hearing; he does not point to any notations in his medical records. The ALJ acknowledged Plaintiff's hearing testimony; however, he properly considered the evidence of record. Based on Plaintiff's activities and his medical treatment records the ALJ determined

Plaintiff was capable of performing sedentary work. Substantial evidence supports the ALJ's findings.

In sum, the ALJ explained how the objective evidence he cited supports his RFC assessment that Plaintiff is capable of performing the requirements for sedentary work.

### 2. Consideration of New Evidence

Plaintiff argues that his "case should be remanded for consideration of J. Adger Brown's vocational evaluation and the Functional Capacity Evaluation." Pl.'s Br. 21. Plaintiff acknowledges the evidence is dated after the date of the ALJ's decision but argues that it relates back to that period and is material. *Id.* The Commissioner contends that Plaintiff did not meet the criteria for submission of post–hearing evidence under the regulations because the evidence he submitted is not new, it does not create a reasonable probability that it would change the outcome of the ALJ's decision, and Plaintiff cannot establish good cause for his failure to submit the evidence earlier. Def.'s Br. 30-32.

Upon receipt of Plaintiff's request for review of the ALJ's decision, on February 8, 2018, the Appeals Council notified counsel for Plaintiff that it had received the request and indicated Plaintiff could send more evidence or a statement about the facts and law in the case. Tr. 14. The Appeals Council letter specifically stated:

> We consider additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

*Id.* Plaintiff submitted a Vocational Evaluation Report dated March 30, 2018 from rehabilitation consultant J. Adger Brown, Tr. 7-13, and a Functional Capacity Evaluation ("FCE") dated January 3, 2018 from Cora Physical Therapy and Dr. Anthony W. Alexander, Tr. 17-30. On

November 21, 2018, the Appeals Council filed its Notice of Appeals Council Action. Tr. 1-5. The Appeals Council determined that the two submissions did "not show a reasonable probability that it would change the outcome of the decision." Tr. 2. The Appeals Council did not exhibit the evidence. *Id.*

When a claimant requests review of an ALJ decision, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an [ALJ]." 20 C.F.R. § 404.967. The regulations permit claimants to submit additional evidence that was not before the ALJ when requesting Appeals Council review. 20 C.F.R. §§ 404.968, 404.970. In such cases, the Appeals Council will consider "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Pursuant to the regulation, the "Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935[6] . . . ." 20 C.F.R. § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't Health and Human Servs.,* 953 F.2d 93, 95-96 (4th Cir. 1991)). If, upon consideration of all the evidence (including any new and material evidence), the Appeals Council finds that the ALJ's

---

[6] 20 C.F.R. § 404.935 provides reasons why evidence may be accepted from a claimant who missed a deadline. Those reasons include: (1) "Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." 20 C.F.R. § 404.935(b)(1)-(3).

action, findings, or conclusions are not contrary to the weight of the evidence, it can simply deny the request for review. *Meyer,* 662 F.3d at 705. Nothing in the SSA or the regulations requires the Appeals Council to explain its rationale for denying review. *Id.* In this case, with regard to the evidence submitted by Plaintiff, the Appeals Council found that the submitted evidence did not show a reasonable probability that it would change the outcome of the decision. In other words, it was not material. *Meyer,* 662 F.3d at 705. Accordingly, the Appeals Council did not make the evidence an exhibit in the record.[7]

Plaintiff asserts that the evidence relates back to the period prior to the ALJ's decision. Pl.'s Br. 21. Nothing in the Notice of Appeals Council Action indicates that it declined to consider the evidence because it did not relate to the period on or before the date of the ALJ's decision. The reason the Appeals Council rejected the evidence is because it determined that the evidence did not show a reasonable probability that it would change the outcome. Tr. 2. Furthermore, Plaintiff did not provide good cause for not submitting the evidence sooner as required by the regulations. As stated above, the applicable regulation imposes a threshold requirement that the claimant "show good cause for not informing [the Appeals Council] about or submitting the evidence as described in § 404.935 . . . ." 20 C.F.R. § 404.970(b). The regulation provides claimants with a list of acceptable causes including a physical or mental limitation, unusual or unexpected circumstances, serious illness, or destruction of records. Here, Plaintiff offered no such explanation to the Appeals Council other than the "documents did not exist at the time of Mr. Jackson's hearing." Tr. 260. Plaintiff did not offer any further elaboration in his brief, other than stating that "the actual testing did not occur until after the ALJ decision was rendered." Pl.'s Br. 21. Plaintiff did not explain why he waited until after the decision to

---

[7] Although the Appeals Council did not "exhibit" the evidence, *see* Tr. 2, it is available at pages

pursue the evaluations. *Howell v. Saul*, No. 218CV01323BHHMGB, 2019 WL 3416613, at *11 (D.S.C. July 10, 2019), *report and recommendation adopted,* No. CV 2:18-1323-BHH, 2019 WL 3413244 (D.S.C. July 29, 2019) (finding that the plaintiff's failure to offer a reasonable explanation for his late submission of additional evidence undermined any right he may have had to consideration of the evidence). The court finds that remand is not warranted for consideration of Mr. Brown's vocational evaluation or the FCE based on the Appeals Council's finding that the evidence lacked reasonable probability of changing the outcome of the decision.

### 3. Plaintiff's Severe Impairments

Plaintiff argues that because "the medical evidence of record includes the presence of medically determinable signs such as difficulty concentrating, confusion, panic attacks, and poor insight into his own psychological condition, the Commissioner's finding that the Plaintiff's anxiety and depression are non-severe is not supported by substantial evidence." Pl.'s Br. 21. The Commissioner asserts that substantial evidence supports the ALJ's Step Two determination that Plaintiff did not have a severe mental impairment. Def.'s Br. 16.

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]" 20 C.F.R. § 404.1508. It is the claimant's burden to prove that he suffers from a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. at 146 n.5.

_____

7-13 and 17-30 of the transcript.

Step Two is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Here, at Step Two the ALJ determined that Plaintiff's non-severe impairments included both physical and mental impairments. Tr. 37-38. As to Plaintiff's medically determinable mental impairments of anxiety and depression, the ALJ found that "considered singly and in combination, [they] do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Tr. 38.

The regulations provide that it is Plaintiff's burden to show the severity of his impairments. *See Bowen v. Yuckert*, 482 U.S. at 146 ("The severity regulation requires the claimant to show that he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'") (citing 20 CFR §§ 404.1520(c), 404.1521(b) (1986)). In order to prevail on this argument Plaintiff must demonstrate that the alleged disorder significantly limited his ability to perform basic work activities, which he has not done. *See* 20 C.F.R. § 404.1522(a). Plaintiff does not cite to any medical record that shows he is unable to perform basic work activities as a result of his anxiety and depression. This allegation of error fails.

In addition, to the extent that the ALJ may have erred in finding any of the foregoing alleged impairments not to be severe, any such error was harmless. *See Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits when ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). "As long as a claim is not denied at step two, it is generally unnecessary for the ALJ to have specifically found any additional alleged impairment to be severe." *Bryant v. Comm'r, Soc.*

*Sec. Admin.*, No. 2:15-CV-4786-RMG-MGB, 2017 WL 394500, at *9 (D.S.C. Jan. 10, 2017), *report and recommendation adopted sub nom. Bryant v. Colvin*, No. CV 2:15-4786-RMG, 2017 WL 384302 (D.S.C. Jan. 25, 2017)). *See also Martinez v. Astrue*, No. CA 1:11-850-CMC-SVH, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012), *report and recommendation adopted,* No. CA 1:11-850-CMC-SVH, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three."). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

IT IS SO ORDERED.

January 8, 2020                                      Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge